HEARD NOVEMBER TERM, 1873.

## *Ex Parte* CARSON.

The Supreme Court has no power, in the exercise of its original jurisdiction under the Constitution, to issue a writ of *certiorari* to a Board of Commissioners of Election to remove into that Court the record of a contested election case.

This was a petition by Carson and others, citizens of Charleston, to the Supreme Court, for a writ of *certiorari* to the Board of Commissioners of Election of the city of Charleston, to remove into that Court the plaint and record, together with the testimony taken by them, in a certain case in which an election for Mayor and Aldermen of the city of Charleston had been contested.

*Miles, Barnwell, Hayne, Porter*, for petitioners.

Feb. 27, 1874. The opinion of the Court was delivered by

MOSES, C. J. The proposition of the counsel on behalf of the petitioners, that the writ of *certiorari* is the remedy by which, in the absence of other provision, the errors of law committed by inferior tribunals are to be corrected may be conceded. As a common law remedy, any Court having the powers of the King's Bench may issue it.

The application in the case before us is to the original jurisdiction of this Court, and the first enquiry which it necessarily must make is as to the power which it is asked to exercise. All the powers of the Supreme Court are primarily derived from the Constitution. These may be supplied or extended by the Legislature, so far as

. they do not effect the authority conferred by that instrument upon it, both as a Court of appellate and original jurisdiction. If within the rules which should govern a Court in the construction of the Constitution, where its own jurisdiction is involved, and by its own determination is to be either limited or enlarged, it should be seen that the proposed power is not clearly granted, it would be inconsistent with all the precedents which we find to assume it. This conclusion is so conformable to all just reason and sense of right, that it is not necessary to refer to the many authorities which might be cited to sustain it.

It will not be contended that, as a Court of "appellate jurisdiction in chancery and for the correction of errors at law," the right to issue the writ in question attaches as an incident properly pertaining to it. The mode of bringing cases before it, implied by the language which expresses its jurisdiction, is by appeal as to matters in ¯equity, and writ of error as to questions at law. We must enquire, then, whether it is included in so much of the Constitution as confers original jurisdiction. The words in that connection are : " The said Court shall always have power to issue *writs of injunction, mandamus, quo warranto, habeas corpus,* and such other original and remedial writs as may be necessary to give it a general supervisory control over all other Courts in the State." Are the " other Courts " over which this " supervisory control " is to be exercised, to be confined to those which by the Constitution were to constitute " the judicial powers of this State," or are they to include tribunals which, with the administrative or executive duties imposed upon them, may nevertheless be required incidentally to exercise powers of a judicial character ? This latter class, we are of opinion, are not comprehended in the clause of the Constitution from which this Court derives its jurisdiction.

The Section referred to invests the Court, in the exercise of original powers, with authority to issue writs of *injunction, mandamus, quo warranto* and *habeas corpus.* These are expressly named. They are not confined in any way to the subject-matter upon which they may act, either in regard to any particular persons or bodies who are to be affected by their enforcement. The grant of power in relation to them is without restriction, and whatever result may be accomplished through their action, by any Court having the undoubted right to issue them, may be attained in their issue by the order of this Court. This unrestrained right as to the writs specified

does not attach to "other original writs," in which that now sought is included. The very qualification which is annexed shows that the power is restricted, and that a more limited jurisdiction was intended.

The word "Courts" in this Section follows in close proximity the enumeration of the Courts which were to form the Judicial Department of the State. The Courts to be supervised by this power, thus conferred on the Supreme Court, were "all the other Courts in the State." A technical significance seems to have been designed in the very use of the phrase. Take the case of the Commissioners of Election, against whom the writ of *certiorari* is now prayed, or of *The Managers of Election*, 1 S. C. R., 180, or *The Commissioners of the Poor*, 2 McC., 170—were bodies like these in the contemplation of the framers of the Constitution when they used the words "all other Courts in the State?" The term "Court" has a well understood and accepted meaning. Popular as well as legal parlance impart to it a sense generally recognized and received. "When a statute uses a word which is well ascertained at common law, the word shall be understood in the statute in the same sense in which it is understood at common law."—9 Bacon Ab., Statute I.

In *Gregory's Case*, Coke's Rep., 6th Part, p. 19, Lord Coke says: "If it be spoken generally of the feast of St. Michael, where there are two feasts, it shall be intended of the most worthy and notorious feast, and with the case at bar, in effect, agrees, Mich., 6 and 7 Eliz., where any Court of the Queen of Record shall be intended one of the four eminent and most excellent Courts at Westminster. If the Act shall be intended according to the letter, Scil, (in any Court of Record,) then the Court of Oyer and Terminer, gaol delivery, Sewers, Sheriff's turn, Leet, Pipowders, and others, will be within the Act, for these and many others are Courts of Record. Then, it being left to the construction of the law, the rule is, " *quod verba equivoca et in dulcio posita, intelliguntur in digniori et potentiori sensu.*"

The terms in which the Constitution, by the 15th Section, grants to the Court of Common Pleas, separate and apart from its powers as a common law Court, authority to issue "all other writs," besides those specifically named, give force to the construction by which we limit our jurisdiction under the 4th Section. The said 15th Section, after giving the Courts of Common Pleas general and exclusive jurisdiction in certain cases, declares that

" they shall have power to issue writs of *mandamus, prohibition, scieri facias,* and all other writs which may be necessary for carrying their powers into effect." If the difference is clearly made in the Constitution, and so it appears to us, we are not called upon to assign the reasons which may have induced it.

We find no obstacle to the conclusion we have reached in the *State Ex Rel. The S. C. R. R. Co.* vs. *The Columbia and A. R. R. Co.,* 1 S. C., 46. There the Court held that it had the power to issue writs of prohibition " in proper cases made." It is true that the said writ is not among those expressly named in the fourth Section of the Constitution; but it issued the Rule in the case then before it, in the exercise of a " supervisory control " over a Court of common law powers established by the Constitution. The process was claimed to prohibit the Judge (and those acting under his authority) from enforcing an order made by him as a Judge of a Superior Court. The power to issue the writ in the particular instance was not doubted by this Court, though on hearing the return it was refused, because the facts did not present a case proper for the operation of the writ.

The motion for the *certiorari* is denied.

*Wright,* A. J., and *Willard,* A. J., concurred.